IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

ANTEZ D. BARNES,
    Plaintiff,

vs.                                                  Case No.: 3:16cv192/LAC/EMT

ALLAN HO, et al.,
    Defendants.
_____/

## REPORT AND RECOMMENDATION

Plaintiff Antez D. Barnes, an inmate of the Florida Department of Corrections ("FDOC"), proceeds pro se and in forma pauperis in this action brought under 42 U.S.C. § 1983. Presently before the court is Defendants' Motion for Summary Judgment with a Memorandum of Law and with supporting materials (ECF Nos. 48, 46). Plaintiff has filed a response to the motion for summary judgment along with evidentiary materials (ECF No. 54).

The case was referred to the undersigned for the issuance of all preliminary orders and any recommendations to the district court regarding dispositive matters. *See* N.D. Fla. Loc. R. 72.2(C); *see also* 28 U.S.C. § 636(b)(1)(B)(C); Fed. R. Civ. P. 72(b). After careful consideration of all issues raised by the parties, it is the opinion of the undersigned that Defendants' motion for summary judgment should be granted.

I.      BACKGROUND

At all times relevant to this action, Plaintiff was an inmate of the Florida Department of Corrections ("DOC"). Plaintiff claims that the three Defendants in this action, all medical employees within the DOC, acted with deliberate indifference to his serious medical needs in violation of the Eighth Amendment. He specifically states that Defendants should have arranged for him to see a surgeon or specialist so that he could have had "resurgery" performed on him (ECF No. 5 at 10). As relief, Plaintiff seeks compensatory, punitive, and nominal damages (*id.*).

Plaintiff alleges that an emergency colostomy was performed on him while at Calhoun Correctional Institution, and then on June 10, 2013, that a "reversal" surgery was performed (*id.* at 5). Plaintiff states he was seen for follow-up by his surgeon, where his "staples" were removed. A second follow-up was scheduled, but Plaintiff was transferred to Century Correctional Institution ("CCI"). At CCI, he claims that Defendant Dr. Ho cancelled the follow-up appointment with the surgeon because of DOC budgetary concerns (*id.* at 6).

Plaintiff saw Dr. Ho again five months later in November 2013 when, according to Plaintiff, the sutures from the surgical wound site "popped out" of him, causing blood and pus to emanate from the wound. Dr. Ho told him nothing could be done because the sutures were not "sticking out" such that they could be cut (*id.* at 6). In

April or May 2015, Plaintiff declared a medical emergency and sought medical help because blood and pus were oozing from the surgical site and he was experiencing abdominal pain (*id.* at 6). A nurse (whom Plaintiff does not identify) told him that, because Dr. Ho was leaving CCI, Plaintiff would have to wait for a new physician to arrive (*id.*).

Plaintiff was subsequently transferred to Santa Rosa Correctional Institution ("SRCI") on June 31, 2015. Once there, he sought medical care from Defendant Nurse Mary Nichols, again reporting that blood and pus were oozing from the surgical site and that the sutures were "poking" him. Nurse Nichols told him there was nothing to do about it unless or until the sutures were close enough to the surface of the skin for them to be removed (*id.*). Nichols stated that Plaintiff would be "seen for wound care," but that did not occur (*id.* at 6–7). However, upon signing up for sick call, Plaintiff was seen by Defendant Nurse K. Rosati, the "wound care nurse," who cleaned the affected area and applied gauze to the wound to help seal it over (*id.* at 7).

Plaintiff was then transferred to Florida State Prison on January 21, 2016, where he received further care for his surgical wound, including antibiotics (*id.*). Plaintiff states he also received a sonogram, which showed "something still nested inside" of him (*id.*). Plaintiff also received dry gauze to absorb the draining fluids (*id.*). At the time he filed his amended complaint, June 6, 2016, Plaintiff was waiting on his next

doctor's appointment to see what the next medical step might be (*id.*). As Defendants relate, Plaintiff underwent a procedure to remove sutures from the wound site on July 1, 2016 (ECF No. 46-1 at 3, 47).

As is relevant to Plaintiff's claims, Defendants provide DOC medical records, as well as an affidavit from Defendant Nichols (ECF No. 46-1 at 2), to show that Plaintiff received adequate medical care from Defendants.[1] As attested by Nichols, the surgical site was not open following the reversal procedure. Instead, Plaintiff was diagnosed as having a keloid on the surgical scar. As related by Nichols:

> Keloids are benign growths, often appearing on a surgical scar, around a foreign body, or even as a result of acne. The diagnosis in this case was correct: Mr. Barnes had a keloid on the surgical scar. He did not have an open wound, as the surgical site was fully healed. Because it was healed, there was no need to refer him to a surgeon.
>
> This keloid formed on the surgical scar, and was at least partially caused by a stitch from the reversal surgery, which was imbedded in the skin. Treatment for this type of keloid is conservative, and includes the provision of antibiotic topical wipes. Removal of the foreign body is the treatment of last resort, as it can cause additional keloids, adhesions and

---

[1] Defendants also assert as an independent ground for dismissal that Plaintiff failed to exhaust his administrative remedies within the prison grievance procedure prior to bringing this lawsuit. Exhaustion of all available administrative remedies is mandatory before a prisoner may file a civil suit challenging the conditions of his confinement. 42 U.S.C. § 1997e(a); Booth v. Churner, 532 U.S. 731, 739, 121 S. Ct. 1819, 149 L. Ed. 2d 958 (2001). Defendants specifically assert that Plaintiff failed to file any grievance appeals with the DOC as is required under DOC procedures. *See* Fla. Admin. Code Ann. r. 33-103.007. However, Plaintiff asserts, and exhibits attached to his original complaint at least colorably demonstrate, that he did file grievance appeals (ECF No. 1 at 13–14). As the court otherwise finds Defendants' ground for dismissal on the merits to be meritorious, there is no need to further address the exhaustion issue.

Case No.: 3:16cv192/LAC/EMT

infection. The conservative approach also includes monitoring to see if the foreign body works itself to the surface, where it can be removed without cutting into the surgical scar. The conservative approach was appropriately followed in this case.

(ECF No. 46-1 at 2).

As Defendants assert, and as medical records show, Plaintiff was treated conservatively during the span of time in which he was seen by the three Defendants and after his latest transfer to Florida State Prison (where no Defendant was employed) (*see* ECF No. 46-1 at 2–3, 8–39). As Defendant Nichols also noted, a CT scan of Plaintiff's abdomen taken at Florida State Prison showed that Plaintiff's surgical site was never open during the duration of the time period in question (ECF No. 46-1 at 3, 49). In fact, the site was not open when on July 1, 2016, a procedure to remove a suture was performed at Florida State Prison; rather, the suture had become embedded and the keloid infected, possibly because Plaintiff had been picking at the area (ECF No. 46-1 at 3, 47).

II. SUMMARY JUDGMENT STANDARDS

In order to prevail on a motion for summary judgment, the moving party must show that the nonmoving party has no evidence to support his or her case or present affirmative evidence that the nonmoving party will be unable to prove his or her case at trial. *See* Celotex Corp. v. Catrett, 477 U.S. 317, 322–23, 106 S. Ct. 2548, 91 L. Ed.

2d 265 (1986). If the moving party successfully negates an essential element of the nonmoving party's case, the burden shifts to the nonmoving party to come forward with evidentiary material demonstrating a genuine issue of fact for trial. *Id.* The "mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247–48, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986). A dispute is "genuine" if the "evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*, 477 U.S. at 248. A fact is "material" if it "might affect the outcome of the suit under the governing law." *Id.* The nonmoving party must show more than the existence of a "metaphysical doubt" regarding the material facts. Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986). Speculation or conjecture from a party cannot create a genuine issue of material fact. *See* Cordoba v. Dillard's, Inc., 419 F.3d 1169, 1181 (11th Cir. 2005). "A mere scintilla of evidence in support of the nonmoving party will not suffice to overcome a motion for summary judgment." Young v. City of Palm Bay, Fla., 358 F.3d 859, 860 (11th Cir. 2004); *see also* Celotex Corp., 477 U.S. at 324. The nonmoving party must either point to evidence in the record or present additional evidence sufficient to withstand a directed verdict motion at trial based on the alleged

evidentiary deficiency. *See* Celotex Corp., *supra*; Owen v. Wille, 117 F.3d 1235, 1236 (11th Cir. 1997) (Rule 56 requires the nonmoving party to go beyond the pleadings and by his or her own affidavits, or by the depositions, documents, affidavits or declarations, admissions, interrogatory answers or other materials on file designate specific facts showing that there is a genuine issue for trial); Hammer v. Slater, 20 F.3d 1137 (11th Cir. 1994).

Evidence presented by the nonmoving party in opposition to the motion for summary judgment, and all reasonable factual inferences arising from it, must be viewed in the light most favorable to him or her. *See* Adickes v. S. H. Kress & Co., 398 U.S. 144, 157, 90 S. Ct. 1598, 26 L. Ed. 2d 142 (1970); Jones v. Cannon, 174 F.3d 1271, 1282 (11th Cir. 1999). Nonetheless, the nonmoving party still bears the burden of coming forward with sufficient evidence of every element that he or she must prove. *See* Celotex Corp., 477 U.S. at 317. A motion for summary judgment should be granted if "the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); Celotex Corp., 477 U.S. at 322.

III. ANALYSIS

A denial of readily available treatment for a serious medical condition constitutes deliberate indifference in violation of the Eighth Amendment. Harris v.

Case No.: 3:16cv192/LAC/EMT

Coweta County, 21 F.3d 388, 393 (11th Cir. 1994). A delay in providing medical treatment can also constitute deliberate indifference, Estelle v. Gamble, 429 U.S. 97, 104–05, 97 S. Ct. 285, 50 L. Ed. 2d 251 (1976), but the inmate must be able to "place verifying medical evidence in the record to establish the detrimental effect of delay in medical treatment . . . ." Townsend v. Jefferson Cnty., 582 F.3d 1252, 1259 (11th Cir. 2009). "Cases stating a constitutional claim for immediate or emergency medical attention have concerned medical needs that are obvious even to a layperson because they involve life-threatening conditions or situations where it is apparent that delay would detrimentally exacerbate the medical problem." *See* Youmans v. Gagnon, 626 F.3d 557, 561 (11th Cir. 2010); *see also* Farmer v. Brennan, 511 U.S. 825, 834, 114 S. Ct. 1970, 128 L. Ed. 2d 811 (1994) (serious medical need is one that, if left unattended, "pos[es] a substantial risk of serious harm."). In addition, an objectively serious deprivation requires showing the response made by the defendant to that need was so deficient as to constitute "an unnecessary and wanton infliction of pain." Estelle, 429 U.S. at 105–06 (internal quotation marks omitted); *see also* Adams v. Poag, 61 F.3d 1537, 1543–44 (11th Cir. 1995).

However, where the inmate has received medical treatment, and the dispute is over the adequacy of that treatment, courts should be reluctant to question the accuracy or appropriateness of the medical judgments that were made. Harris v. Thigpen, 941

F.2d 1495, 1507 (11th Cir.1991) (quoting Waldrop v. Evans, 871 F.2d 1030, 1035 (11th Cir. 1989)). To do otherwise would be "to constitutionalize claims that sound in tort law." Hamm v. DeKalb County, 774 F.2d 1567, 1575 (11th Cir. 1985) (quotation omitted). Thus, there is ordinarily no constitutional violation when some measure of treatment is provided. Harris, 941 F.2d at 1504–05. A misdiagnosis is not enough to establish deliberate indifference unless the defendant knowingly did so. Campbell v. Sikes, 169 F.3d 1353, 1366–67 (11th Cir. 1999). Again, a claim that specific medical procedures have been impermissibly delayed or denied requires an inmate to put verifying medical evidence in the record to establish its detrimental effect. Hill v. Dekalb Reg'l Youth Det. Ctr., 40 F.3d 1176, 1188–89 (11th Cir. 1994), *abrogated on other grounds*, Hope v. Pelzer, 536 U.S. 730, 739 (2002). A claim of deliberate indifference requires proof greater than negligence or even gross negligence. Townsend v. Jefferson County, 601 F.3d 1152, 1158 (11th Cir. 2010). A simple difference in medical opinion between the medical staff and an inmate as to the latter's diagnosis or course of treatment does not establish deliberate indifference. *See* Adams, 61 F. 3d at 1545 (the question of whether a plaintiff should have received different diagnostic tests or treatments is not an appropriate basis for grounding liability on a deliberate-indifference claim); Harris v. Thigpen, 941 F.2d at 1505.

Upon review of the facts of this case, it is clear that, at most, Plaintiff's claim amounts to a difference of medical opinion, and therefore wholly sounds in negligence. Plaintiff provides no medical or other objective evidence to indicate that the diagnoses and treatment provided by Defendants were in any way inappropriate. His only essential argument is that the surgical site was at times painful and oozing blood or pus. Defendants took these symptoms into account and provided appropriate and conservative treatment, albeit not the type of surgical or other specialized treatment that Plaintiff can only postulate would have been more beneficial. Defendant Nichols in fact asserts that to have provided any sort of surgical or other invasive treatment at the time Plaintiff was under their care would only have exposed him to more risk.[2]

As the medical evidence shows, from 2013 to 2016, Plaintiff's surgical area was managed under conservative care without serious exacerbation to his condition. While Plaintiff did eventually undergo a procedure at Florida State Prison to remove an embedded suture, that was only after the surgical area had become infected, more than five months after his arrival at FSP, when he was no longer under the care of Defendants. Hence, it cannot be said that Defendants had been ignoring any obvious

---

[2] Plaintiff also supplies a photocopy of a suture as evidence of the need for its removal, but Defendants do not deny that the suture(s) existed inside his body. Rather, they assert that it was not medically appropriate at the time to attempt to remove any suture, an assertion that Plaintiff fails to countermand with any substantial evidence.

Case No.: 3:16cv192/LAC/EMT

medical need, for it must be fairly noted that medical officials at FSP did not find any immediate need for more pronounced medical intervention upon Plaintiff's arrival at their facility. Moreover, even if it were arguable that the procedure that was eventually performed could or should have been performed earlier while Plaintiff was under Defendants' care, that again would be at most a matter of negligence. As such, Plaintiff's claims do not establish deliberate indifference and therefore do not create constitutional liability.

For the aforementioned reasons, it is respectfully **RECOMMENDED**:

1. That Defendants' Motion for Summary Judgment (ECF No. 48) be **GRANTED**.

2. That the clerk be directed to enter judgment accordingly and close the file.

At Pensacola, Florida, this 4th day of September 2018.

/s/ *Elizabeth M. Timothy*
**ELIZABETH M. TIMOTHY**
**CHIEF UNITED STATES MAGISTRATE JUDGE**

## NOTICE TO THE PARTIES

**Plaintiff's objections to these proposed findings and recommendations must be filed within fourteen (14) days after being served a copy thereof, <u>and Defendants' objections must be filed within seven (7) days of receipt of any objections filed by Plaintiff. Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control.</u> A copy of objections shall be served upon all other parties. If a party fails to object to the magistrate judge's findings or recommendations as to any particular claim or issue contained in a report and recommendation, that party waives the right to challenge on appeal the district court's order based on the unobjected-to factual and legal conclusions.** *See* **11th Cir. Rule 3-1; 28 U.S.C. § 636.**